---

POLANCO, PLAINTIFF AND APPELLEE, *v.* GOFFINET ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action for Annulment of Foreclosure Proceedings.

No. 2193.—Decided February 25, 1921.

FORECLOSURE—MORTGAGE—AGRICULTURAL LOAN—LIQUIDATION OF ACCOUNT.—It being alleged in the petition in a summary proceeding brought to foreclose a mortgage created to secure an agricultural loan that the balance sued for had been previously struck in agreement with the mortgagor, a fact which is an essential element of the basis on which the institution and maintenance of the proceeding rest, and it having been proved in an adversary action for damages brought by the mortgagor that the said allegation was false, the foreclosure proceeding is null and void and the mortgagee is obliged to indemnify the mortgagor for the damages sustained by him as a result of the foreclosure.

ID.—ID.—DAMAGES.—The loss suffered by a foreclosed mortgagor during the time

he was deprived of the possession of the property is the direct result of the unjust and malicious act of unlawfully resorting to a summary foreclosure proceeding and is, at the same time, a reasonable basis for estimating the damages.

ID.—ID.—PARTIES DEFENDANT.—When a foreclosing mortgagee is sued by the mortgagor for damages resulting from the foreclosure and desires to transfer his liability to the purchasers of the foreclosed property, he should move that they be joined as defendants so that their liability may be determined after they have been given their day in court.

The facts are stated in the opinion.

*Messrs. Sarmiento, Rodríguez Serra* and *Puig* for the appellee.

*Mr. H. G. Molina* for the appellants.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

On April 11 and July 17, respectively, of 1912, José Jacinto Nicolás Polanco contracted with the Central Santa Juana of Caguas to plant for delivery to such Central during the seasons of 1913 to 1917 inclusive, 250 *cuerdas* of cane and for delivery during each of the seasons of 1914 and 1915, 100 *cuerdas*. A liquidation of accounts under a contract for agricultural advances, also dated April 11, 1912, showed that on March 17, 1914, Polanco had already received from and owed August and Constant Goffinet $15,725.55. An instrument dated March 27, 1914, after reciting these facts, proceeds to open a new account with an additional credit of $14,274.45, making a total of $30,000, to secure the payment of which, with interest thereon at ten per cent and an additional amount of $500 to cover costs, expenses and attorney fees, Polanco executed in favor of his said creditors a third mortgage upon the property planted or to be planted as aforesaid and subject to the following conditions:

"(a) The balance left from the $30,000 after deducting the $15,725.55, or $14,274.45, shall remain in the possession of the mortgagees, August and Constant Goffinet, to be taken in current account by Polanco for expenses incident to the sugar cane plantation in the manner to be stated. All of the sugar obtained from milling the cane of the present season shall be applied to the reimbursement of his account without any limitation, the balance resulting at the end

of the present season to be considered as an advance and carried forward to the next season of 1915.

"(*b*) As Polanco is obliged to deliver all of the cane of this crop to the Santa Juana Central, the Goffinet brothers agree to pay him, as aid or compensation, one dollar for each ton of cane delivered, giving him a weekly settlement of the money so to be received, and the amount advanced for harvesting and hauling the cane to the mill during the present season shall be added to the balance of 1914 and paid in 1915.

"(*c*) The Goffinet brothers shall continue to make the necessary advances from the amount agreed on in this mortgage contract for harvesting, delivering, planting, cultivating and improving the cane from the year 1915, according to the contracts entered into and in force between Polanco and the Société Anonyme des Sucreries de Saint Jean at the rate of $50 per acre of seeded cane and $25 per acre of ratoon cane, it being agreed that these advances shall be made proportionately as Polanco carries on his agricultural operations and provided that the manager of the Santa Juana Central shall consider that the crops under cultivation justify and secure the amount required and when the cane is harvested and delivered at the cars for transportation to the factory.

"(*d*) The amount shown to be owed by Polanco from the accounting at the close of the season of 1915 as a result of the ordinary advances made during that season, that is, the money received by him for cultivating the cane, shall be repaid by him with the total amount of sugar produced from the cane of the season of 1915 and the Goffinet brothers, or their authorized agents in Porto Rico, are expressly and unreservedly empowered to sell the said sugar for the account of Polanco and any surplus resulting shall be applied to the payment of the balance of 1914 consisting of the amount brought forward and the advances made for the harvesting and delivery of the cane.

"(*e*) Polanco shall repay in like manner the amounts owed for similar purposes in subsequent seasons, but it is agreed that he must fully discharge his indebtedness to the Goffinet brothers with interest thereon not later than July 31, 1917.

"(*f*) If during any season the parties should agree to allow any planted cane to remain unharvested because it is considered unfit to be ground, then the said cane shall be appraised and the estimated amount of the advances received therefor by Polanco shall be carried

forward to the next season's account to be repaid during the season in which the said cane is ground.

"(*g*) If at the close of the seasons of 1915 and 1916 or either of them Polanco shall not have repaid the ordinary advances, that is, the advances for planting, cultivating, harvesting and delivery, this mortgage obligation shall be considered as matured and the Goffinet brothers, through their agents in this Island, may sue for the recovery of the whole amount due and the foreclosure of the mortgage under the summary proceeding provided for in the Mortgage Law and its Regulations."

On August 24, 1917, summary proceedings for the foreclosure of this mortgage were instituted by petition, which alleged, among other things, "that on the 1st instant the foreclosing mortgagees, together with the defendant mortgagor, practised an accounting of the advances made for agricultural purposes secured by the said mortgage, a balance of $18,086.46 resulting in favor of the plaintiff mortgagees as of the first instant."

This pleading also offered in the usual form to indemnify "whatever damages and injury may be caused to the debtor or to third persons interested, through malice or negligence in the faithful exposition of the facts stated."

On August 27, 1917, Polanco moved to set aside the order of the court entered on the 24th of that month requiring payment of the sum alleged by the mortgagees to be due under penalty of sale at public auction of the mortgaged property in case of failure to make such payment, upon the following grounds:

"1. The complaint filed in this foreclosure proceeding by August and Constant Goffinet, the plaintiffs herein, does not conform to the requirements of Article 169 of the Regulations for the application of the Mortgage Law in force in Porto Rico:

"First. Because the instrument evidencing the debt sued for is not attached to the complaint.

"Second. Because the complaint does not show categorically the exact amounts collected as interest or as a part of the principal of the debt.

"Third. There is no authentic document showing the exact amount of the balance of the debt due.

"2. The defendant mortgagor further alleges that the plaintiffs have falsely and maliciously set out in the third count of the said complaint that on the first instant the plaintiffs liquidated, with the agreement of the mortgagor, the financing account secured by the mortgage. That allegation of the plaintiffs is absolutely false and could have been made only for the purpose of inducing the court to enter the order which the defendant asks to be reconsidered."

The mortgagees resisted this motion for the reason, among others, "that the summary foreclosure proceeding cannot be stayed except for the reasons specifically prescribed in article 175 of the Regulations for the Execution of the Mortgage Law."

The gist of the ruling denying the motion is contained in the following paragraphs:

"If this court should reconsider the summons issued in this case and hold that for the reasons alleged by the mortgagor the summons should not be issued, that would be equivalent to holding that the order for the summons is void, and article 175 of the Mortgage Law Regulations expressly provides that 'all claims involving the nullity of the title or *of the proceedings,* shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the foreclosure proceeding.'

"The mortgagor is not without protection by virtue of this provision. His interests and those of the mortgagees are perfectly harmonized and secured. The same law that prohibits the mortgagor from suspending or interfering with the proceeding points out to him the manner of protecting his interests. Only by respecting the completeness of this foreclosure proceeding is it possible to live up to the spirit of the Mortgage Law whose purpose is to secure and promote territorial credit by means of the guaranty of the mortgage and the speedy enforcement of payment. *Banco Territorial y Agrícola* v. *Cuevas,* 8 P. R. R. 537; 18 P. R. R. 268; 20 P. R. R. 181."

The order of sale was made on the same day of the ruling last above mentioned, to wit, October 2, 1917. The property was sold on October 25 for $19,202. In the meanwhile, on

October 9, 1917, Polanco filed suit to vacate the summary proceeding above mentioned, to cancel whatever entries might be made in the registry of property by reason thereof, and for damages together with costs, disbursements and attorney fees.

The theory of the complaint herein, in so far as the nullity of the foreclosure proceeding is concerned, sufficiently appears from the fourth and fifth paragraphs of said pleading, which read as follows:

"IV. That although the defendants recorded the said contract in the registry of property at page 154 of volume 16 of Gurabo, ninth record, property No. 301, it was not set out in a marginal note or in any other way in the said registry that the plaintiff had contracted the future obligations mentioned in the said agreement, and that so, with no showing in the registry of property of the existence and effectiveness of the mortgage created by the plaintiff, the defendants brought in this court an action to foreclose the said mortgage on the said property owned by the plaintiff, according to the Mortgage Law and its Regulations, to 'collect the sum of $18,286.46 without first having liquidated the financing accounts in conformity with the contracts mentioned in the complaint.

"V. That in the aforesaid summary foreclosure proceeding, the defendants, foreclosing mortgagees, failed expressly to state in their initial petition the exact amounts recovered from the debtor, plaintiff herein, by way of interest or on account of the principal indebtedness. They did not attach to the said petition, as they should have done, the instrument evidencing the credit claimed. Neither did they annex to the said petition an authentic and authoritative document showing the exact, liquid, demandable amount of the debt. Further, they falsely set out in the said petition that on August 1, 1917, the defendants, in concurrence with the mortgagor, liquidated the account of advances secured by the mortgage. The plaintiff contends that said account has not been liquidated by mutual accord of the interested parties, but that, on the contrary, the defendants herein, foreclosing mortgagees, arbitrarily and in violation of the said contracts, fixed the balance in their favor at $18,286.46."

The facts found and conclusions reached by the trial judge are stated by him thus:

"The pleadings of the parties and the evidence show that plaintiff Polanco created a mortgage as an additional obligation to secure any balance that he might owe 'to the defendants under the contract for advances for planting sugar cane at its maturity in the year 1917, the defendants to receive, as they did, during the five years for which the said contract was made the proceeds of the sale of all the sugar produced from the cane of the plaintiff. At the maturity of the said contract the said defendants Goffinet, without first liquidating the financing account with the plaintiff and knowing of their failure to credit to the account of the plaintiff a sum that should have been so credited, as well as of an overcharge in the item of interest and of other facts called to their attention by the plaintiff, brought a mortgage foreclosure proceeding against plaintiff Polanco to recover a balance of $18,286.46 fixed exclusively by the defendants who alleged before the court that the account had been liquidated in agreement with the plaintiff and in that way obtained from this court, which relied upon the allegations of the complaint in the foreclosure proceeding, the corresponding order for a demand summons against the mortgagor.

"A short time after the summons was issued the judge of this court obtained a leave of two months in order to visit the United States and Hon. Rafael Rivera 'Zayas was appointed to substitute him as acting judge, before whom Polanco, the mortgagor and plaintiff in this case, moved for a reconsideration of the order for the demand summons on the ground that the said order was obtained by a false and malicious statement of the facts. The motion for reconsideration was opposed by the defendants, the then mortgagees, who alleged, among other things, that the mortgagor had in his favor the remedy established by article 175 of the Mortgage Law Regulations to secure full indemnity if he had been injured. The court overruled the motion for reconsideration and the foreclosure proceeding terminated in the sale of the mortgaged property at public auction on October 25, 1917.

"From a careful consideration of the facts stated, in harmony with the law applicable to the case, it is to be observed that defendants Goffinet could not lawfully maintain a foreclosure proceeding for the collection of their claim, for, as mortgagor Polanco had not admitted the balance of $18,286.46, it is clear that the indispensable condition required by article 169 of the Mortgage Law Regulations was lacking. And the fact that there was no such liquidation and no such admission is shown not only by the testimony of plaintiff

Polanco, but also by that of the defendants' attorney in fact, who said that an agreement had not been reached because of differences in the computation of the interest and in the application of the percentage on liquidating the cane ground in the factory from the proceeds of which the defendants were to be reimbursed, according to the financing contract. *George P. Plant Milling Co.* v. *Navas*, 22 P. R. R. 255.

"It is true that the court could have refused to issue the summons, but it having been alleged in the complaint that the account had been liquidated in agreement with the mortgagor, the judge had a right to rely on that averment.

"The omissions mentioned are sufficient to void the mortgage foreclosure proceeding, according to the letter and spirit of article 128 of the Mortgage Law and article 169 of its Regulations.

"With the action for the annulment of the foreclosure proceeding the plaintiff set up a claim for damages, based undoubtedly on the provisions of said article 169 of the Regulations which imposes upon the mortgagee the obligation of complying with certain requirements in instituting the proceeding and subjecting him to liability for any loss or damage which the mortgagor or interested third persons may suffer through his malice or negligence in not making a true statement of the facts and circumstances to be considered by the court before authorizing the institution and prosecution of the proceeding.

"In their complaint the defendants recited that they assumed the obligation to indemnify the mortgagor or interested third persons for any damages caused by malice or negligence in not making a true statement of the facts, and notwithstanding this acknowledgment of the mortgagees, they falsely alleged in the complaint that they had liquidated the financing account secured by the mortgage in agreement with the mortgagor and found a balance in favor of the mortgagees of $18,286.46. The court now holds that the defendants in this action were negligent in not fulfilling a duty which they owed to plaintiff Polanco, that is, to observe strictly the indispensable requirements of the Mortgage Law and its Regulations, to which we have referred. And the court holds also that there was malice on the part of the mortgagees, the Goffinets, not only in falsely stating the facts and circumstances to be considered by the court which ordered the institution of the foreclosure proceeding, but also in the attitude assumed by them when the mortgagor, confronted by the danger of losing the possession of his property in a summary proceeding, asked the court to protect him against the threatened loss.

"As regards this aspect of the suit, the only evidence before the court is that of the plaintiff, for the defendants offered no evidence to rebut the evidence of the plaintiff to the effect that by reason of the eviction from his property plaintiff Polanco had suffered losses and damages as follows:

| | |
|---|---:|
| Expended in plowing | $3, 015. 00 |
| Expended in seed-bed | 2, 375. 00 |
| Product of seed-bed | 4, 000. 00 |
| Expended in building nine sheds | 7, 750. 00 |
| Estimated income from Oct. 25, 1917, to Jan. 25, 1919, at $349.20 monthly | 5, 238. 00 |
| Total | $22, 078. 00 |

"Of these items the court finds that the first three are exaggerated and believes it equitable to reduce the items for cost of plowing, cost of seed-bed and product of seed-bed to half of the amounts claimed, making these total $4,685. The item of $7,750 for the amount expended in building nine sheds should not be allowed because these sheds form a part of the property sued for and if the plaintiff recovers the possession of the said property it is natural that he will get with it the buildings that were on it when it was sold. As regards the item of $5,238 for rents and profits from the property, the court understands that it should not be changed because that item was established conclusively by the evidence, not of experts, but categorically and absolutely, and the said evidence not having been rebutted, the court must accept the result as just and reasonable."

Mortgagees appealed from an adverse judgment and assign as error that:

1. The court erred in finding (*a*) that the defendants foreclosed the mortgage "without first liquidating with the plaintiff the account of advances" and that they had arbitrarily determined the amount of the balance; (*b*) in holding apparently that the defendants failed to include amounts that should have been credited to the agricultural debtor; (*c*) in finding that the interest had been computed in excess, and (*d*) in declaring that there were some other circumstances to which the plaintiff had called their attention.

2. The court erred in holding that defendants Goffinet could not lawfully recover their claim by the summary fore-

closure proceeding because the debtor Polanco had not acquiesced in the balance of $18,286.46, which, in the opinion of the court, was an "indispensable requirement prescribed by article 169 of the Mortgage Regulations."

3. The court erred in mulcting the defendants in damages.

4. The court erred in fixing the damages at $9,923.

5. The court erred in not holding and decreeing that the purchasers Jacinto and Florencio Polanco, who acquired the property with knowledge of the nullity pleaded in this suit, should render plaintiff an account of the net profits earned from the day of the sale, October 29, 1917, to the date of its restitution and pay the amount thereof to the plaintiff, less a reasonable interest on the purchase price of $19,202.

For the purposes of this opinion it may be conceded, without holding, that the right of mortgagees to demand payment of any balance due them and to foreclose the mortgage was not dependent upon liquidation of accounts between Polanco and the Central Santa Juana under the grinding contract. Only two witnesses, to wit, plaintiff on his own behalf and the attorney in fact of mortgagees for the defense, testified in regard to the attempted liquidation of the account for agricultural advances. After a careful review of this testimony we cannot say that the court below manifestly erred in finding that the foreclosure proceedings were instituted "without previous liquidation with plaintiff of the account for advances" or that the question as to the amount of interest admitted by the witness for defendants to be in dispute is so insignificant as to fall within the principle of *de minimis non curat lex.*

Aside from the bald statement that the mortgage "was executed to secure an agricultural loan of $30,000 made by mortgagees to mortgagor" and the reference to a liquidated balance, the petition for foreclosure contained nothing whatever to show either the amount advanced, if any, any credit on such account, any balance due thereon, or even the exis-

tence of the account itself. This being true, whatever error may be involved in the other details mentioned in the first assignment, if the language of the trial judge above quoted be open to the interpretation placed thereon by appellants, would seem to be harmless.

The argument under the second assignment seeks to distinguish between the "certainty" (*certeza*) of the debt referred to in section 169 of the Regulations and the amount thereof and in this way to avoid application of the doctrine announced in *The George P. Plant Milling Co.* v. *Navas,* 22 P. R. R. 255. Appellants also say that neither the question of such differentiation nor the question of setting aside a sale as distinguished from the mere refusal to order same was called to the attention of the court nor considered in that case. It is suggested that upon the question of vacating a foreclosure sale "irregularities in the original process or in its service, *not amounting to fatal jurisdictional defects,*" cannot be considered and that "*action will not be taken on account of any defects or irregularities which do not invalidate the title of the purchaser,*" citing 27 Cyc., page 1712. It is further intimated, by way of analogy, that "to entitle him to an injunction on the ground that the mortgagee's claim is excessive, the mortgagor must have tendered the amount which he admits to be due or must offer in his bill to pay it," citing 19 R. C. L. 618. The case of *Fleitas* v. *Richardson,* 147 U. S. 538, is likewise quoted at length to show that, for purposes of the jurisdiction conferred by Congress on Circuit Courts of the United States where the parties are citizens of different States, the executory process that obtains in Louisiana "is a civil suit *inter partes.*" We shall not endeavor to follow counsel for appellants in the details of his very interesting and ingenious argument along these lines, nor have we here attempted anything more than to indicate briefly the general trend thereof. It will suffice to add that we have not overlooked a similar line of reason-

ing based upon general principles of Spanish jurisprudence, the history of the Mortgage Law and the difference between the same as substantive and the procedural regulations for the enforcement thereof. To set forth and to answer all of this in detail would extend this opinion to inordinate length.

No decided case nor authoritative Spanish text directly in point has been produced. The case before us is not an equitable proceeding to restrain a sale for an amount in excess of the actual debt. And the American authorities dealing with equitable foreclosure in which the mortgagor has an opportunity to defend upon any just and reasonable ground before the decree is made, and where all the parties concerned have ample opportunity to be heard after the sale and before confirmation thereof, or else in many instances may redeem even later, can have little or no persuasive force in this jurisdiction in a case wherein the mortgagees have elected, and notwithstanding the timely objection and earnest protest of the mortgagor, have insisted upon and declined to abandon the summary proceeding of the Mortgage Law. A single exception to this generalization is found in the decisions of Louisiana, which seem to sustain both the doctrine announced by this court in *Plant Milling Company* v. *Navas* and the conclusion reached by the trial judge in the instant case.

In the *Plant Milling Company Case* we held in substance that in accordance with the letter and spirit of the Mortgage Law, before an order of sale may issue the debt must be shown to be unquestionable in some specific and authentic manner and that a sworn account does not meet this requirement.

In *Day* v. *Fristoe,* 7 Martin (Old Series) 239, the Supreme Court of Louisiana, more than one hundred years ago, said that "the privilege of proceeding by seizure is a remedy granted by the Spanish Law, in cases where the plaintiff is bearer of a title which imports a confession of judgment."

In *Wray* v. *Henry,* decided in August, 1821, it was pointed out that:

"A Judge at his chamber cannot try a question of fact, a matter in pais, viz., the verity or genuineness of an endorsement, or the signature of a party to a *sous seing prive.* All the positive facts, in a case like the present, must be established before him by authentic acts. The negative one, that the money is not paid, is before him, required to be made out by the oath of the creditor, although, generally speaking, one be not bound to prove a negative.

"If the order of seizure issued improperly, the defendant had only to show this, to procure it to be set aside. He had no need to go into the merits of the case."

In *Ward* v. *Douglass,* 22 La. Ann., page 463, it was held, as stated in the syllabus, that:

"Where mortgage notes have been given to factors or commission merchants, to secure advances made and supplies furnished to a planter, and an account is rendered and a balance struck showing the amount due by the planter, the factor cannot resort to the executory process to enforce payment of the balance claimed to be due, even if a mortgage exists to secure the balance.

"In such a case the factor should be compelled to establish the correctness of his account contradictorily with the planter."

See also *French* v. *The Mechanics and Traders Bank,* 4 La. Ann. 152; *Hoffman* v. *Steib,* 22 La. Ann. 267; *Van Raalte* v. *The Congregation of the Mission,* 39 La. Ann. 617, and *Leesville* v. *Wingate,* 123 La. Rep. 387.

Nor can we agree with appellants that the executory process in Louisiana is more of an *ex parte* proceeding than the summary method of the Mortgage Law. In this Island the debtor is permitted to produce either documentary evidence "of criminal proceedings charging a forgery of a mortgage deed, the subject of the proceedings, in which a complaint shall have been admitted or an order of prosecution has been issued," or else a certificate from the registrar "to the effect that the mortgage under which the proceedings are being prosecuted has been cancelled, or an authentic copy

of the public instrument of the cancellation of the same, bearing a memorandum of its presentation in any of the registries where it is to be noted, executed by the plaintiff or by his predecessor or successors in interest, the transfer in a proper case being also proved by documentary evidence."
In the one case "the suspension shall continue until the criminal proceedings are concluded, and they may then be resumed if the forgery is not established." In the other "the judge shall order the parties to appear before him for a hearing four days after service of summons; he shall hear the parties, consider the documentary evidence they may present, and render a decision in the form of an order on or before the second day."

And in either event (italics ours) "an appeal may be taken from this decision both for a stay and a review, *if it orders* the suspension of the proceedings."

Such compensation for these hardships as the Mortgage Law extends to the mortgagor is found in the following paragraph:

"All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity, truth, extinction or amount of the debt, shall be heard in a proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings."

Articles 738, 739 and 740 of the Louisiana Code of Practice read as follows:

"Article 738.—The debtor, against whom this order of seizure shall have been rendered, may obtain an injunction to suspend the sale, if before the time of sale he files in the court issuing the order his opposition in writing, alleging some of the reasons contained in the following article and of which he shall swear to the truth.

"Article 739.—The debtor can only arrest the sale of the thing thus seized, by alleging some of the following reasons, to wit:

"1. That he has paid the debt for which he is sued;

"2. That he has been remitted by the creditor;

"3. That it has been extinguished by transaction, novation or some other legal manner;

"4. That time has been granted to him for paying the debt, although this circumstance be not mentioned in the contract;

"5. That the act containing the privilege or mortgage is forged;

"6. That it was obtained by fraud, violence, fear, or some other unlawful means.

"7. That he has a liquidated account to plead in compensation to the debt claimed;

"8. And finally, that the action for the recovery of the debt is barred by prescription.

"Article 740.—When the judge grants an injunction, on the allegation under oath of any of the reasons mentioned in the preceding article, he shall require no surety from the defendant, but he shall pronounce summarily on the merits of his opposition if the plaintiff requires it, as is explained below."

Moreover, under the liberal view taken by the Supreme Court of that State, article 739, in its application, has been confined to cases involving the issuance of injunctions without bond; but where bond is given the execution of writs of seizure and sale is restrained for causes other than those enumerated in the said article. See *Taft* v. *Donnes,* 105 La. 699, and cases cited; *Hackmaller* v. *Figueroa,* 125 La. 307.

And it is upon these and other provisions of the Louisiana Code so interpreted by the local courts and by virtue of which "the sale cannot take place until the debtor has had notice and opportunity to interpose objections" that the Supreme Court of the United States in *Fleitas* v. *Richardson* bases its conclusion that "this proceeding, therefore, is a civil suit which, where the parties are citizens of different States, is within the jurisdiction conferred by Congress on the Circuit Court of the United States."

Again, the proposition as stated by appellants as to whether or not the acceptance by the debtor of the balance claimed by the creditor to be due is an indispensable prerequisite to the favorable action of the court on an application for summary foreclosure, is neither so important nor

so pertinent as is the inquiry in regard to what other show-
ing, if any, mortgagees made with reference to the fact of
indebtedness and the amount thereof, the sufficiency of the
averment as to a liquidated balance, without more, and the
effect of the falsity of such allegation when shown to be
untrue after the court below had acted in reliance thereon,
as supplying an indispensable element in the basis of its
order. In this connection it is fair to state in passing that
the attorney who has briefed and submitted the case for ap-
pellants in this court does not appear to have represented
the mortgagees in the summary proceedings, origin of the
present controversy.

The mortgage involved in the instant case, together with
the certificate of the registrar as to the record thereof and
the absence of any cancellation, partial or otherwise, would
have sufficed no doubt to show an existing indebtedness to
the amount of. $15,725.55 already owing by Polanco at the
time of the execution of such instrument, together with ac-
crued interest on that sum, had not the parties indicated an
intention to include this as an item in the continuing current
account. As to the rest of the $30,000, possession of which
was retained by the mortgagees to be advanced from time
to time on demand of the mortgagor at the rate of fifty dol-
lars per *cuerda* for newly planted cane and twenty-five dol-
lars per *cuerda* of subsequent yearly growth, provided al-
ways the condition and state of cultivation of such planta-
tion in the judgment of the manager of the Central should
warrant and properly secure the amount so demanded, there
is nothing either in the mortgage or in the petition for the
summary foreclosure thereof, save only and except the vague
and obviously inaccurate reference to the loan of $30,000 as
having been made and the averment as to a liquidated bal-
ance of $18,286.46, to show the actual existence of any in-
debtedness whatsoever. And from the statement of the trial
judge it is quite clear that in issuing the writ demanding

payment of the alleged balance he relied upon the solemn assurance by mortgagees as to previous liquidation of the account.

From the terms of the mortgage it is equally plain, at least in so far as the future loan is concerned, if not indeed as to the entire indebtedness, that the intention of the parties was to secure any balance that might be due the mortgagees at any time rather than any one individual instalment or particular group of distinct and separate advances as made or other items charged on the debit side of the current account. *Durrive* v. *Key,* 20 La. Ann. 154; *Pickersgill* v. *Brown,* 7 La. Ann. 298. And this, beyond any reasonable doubt, seems to have been the theory of the mortgagees in the petition for summary foreclosure of the mortgage.

"In keeping with the principles of the Roman Law, which cannot be violated without deranging the science of lawmaking, Law 27, Title 13, *Partida* 5, prescribed that in future obligations the mortgage should begin to run from the time the obligation was performed. So, if a person pledges his property to secure a loan to be made him and before such loan is made he gets the money from another to whom he also pledges the property, the latter enjoys priority because, the reciprocal contract being real, the thing must necessarily be delivered before the contract can be regarded as consummated. Up to such time there is a promise to perform an obligation but not a true and executed obligation, etc." 3 Galindo, 363.

"The stipulation of a mortgage to secure a loan not made is an obligation on a condition potestative on the part of the debtor. Conventional mortgages of that kind do not take rank from the date of their inscription. It is not the contract itself which forms the *vinculum juris,* but the accomplishment of the condition. The mortgage would have remained inoperative if the credit had not been used, and it can only have effect from the date and for the account of the loan. 2 Troplong Hypotheque, Nos. 477-480." *Meeker* v. *The Commissioners of the Clinton & Fort Hudson R. R. Co.,* 2 La. Ann. 971.

See also *Langfitt & Perry* v. *Ervin Brown, Administrator,* 5 La. Ann. 231, and *Morris* v. *Executors of Cain,* 39 La. Ann. 712.

Galindo and Escosura lament the fact that the framers of the Mortgage Law deviate from this principle in ordaining that "a mortgage constituted for the security of a future obligation or one subject to recorded suspensive conditions, shall produce its effects against third persons from the date of its record, if the obligation be contracted or the condition fulfilled." Article 142 of the Mortgage Law. But the modification goes only to the question of the manner in and extent to which such consummation of the contract shall affect the rights of third parties. The mortgage, although eligible to record, remains as before incomplete and attaches only upon accomplishment of the potestative condition; whereupon the consummation so effected relates back at once to the date of the instrument as between the parties, and, upon entry of the marginal note referred to in article 143, to the date of the record in so far as the rights of third persons are concerned. Galindo and Escosura, volume and page *supra.* In the interest of brevity we refer to, without quoting, articles 143 and 128 of the Mortgage Law, 178 and 169 of the Regulations, and 1427 and 1465 of the former Law of Civil Procedure.

Escriche defines the *"juicio ejecutivo"* as "an action the purpose of which is to enforce what is already determined, or which appears from a title which has the same force of law as a judicial decision."

In *Arvelo* v. *Banco Territorial y Agrícola,* 25 P. R. R. 677, following the doctrine announced in *Early* v. *Doe,* 57 U. S. 609, 617, this court said:

"The proceeding brought by the Banco Territorial y Agrícola de Puerto Rico against the Succession of Hilario Arvelo, was a summary, special and *ex parte* proceeding and the provisions of the Mortgage Law and its Regulations should have been strictly observed."

We need not now determine whether or not, as insisted by appellee, under section 1776 of the Civil Code, the placing upon record of some authentic evidence of the fulfilment of

the condition potestative is essential to the validity of the mortgage as between the parties thereto. It may or may not be true that neither the detailed statement of the various amounts actually advanced with proper credit of all payments made, nor the averment of a liquidated balance, without more, is enough to justify the issuance of the writ demanding payment.

More than enough has been said to show that in the case at bar the averment as to liquidation of the account and an agreed balance due, that being the sole evidence as to the consummation of the mortgage contract or as to the existence of any indebtedness, was a matter of vital importance,—whatever may be the general rule governing cases disclosing some other adequate basis for the institution of the proceeding.

That as to all matters other than the pendency of criminal proceedings for forgery of the mortgage deed or actual cancellation of that obligation evidenced by a certificate from the registrar or an authentic copy of a public instrument, the summary proceeding of the Mortgage Law is purely *ex parte* as was held by this court in *Arvelo et al.* v. *Banco, supra,* would seem too plain for argument.

We are not disposed at the present time, therefore, seriously to consider nice distinctions between the "correctness" or "certainty" (*certeza*) of the debt and the "amount" thereof, nor between reasons for refusing to issue the writ demanding payment of the debtor and grounds for vacating the proceedings after the sale. The mortgagee who elects to exercise his right to this drastic remedy must be careful to comply with the requirements prescribed as some degree of protection to the mortgagor from wilful or negligent abuse of such right; or else be prepared to meet the obligation imposed upon him by law and of necessity expressly assumed by him in his petition for foreclosure, in the event of his failure to make "a true statement of facts and of

the circumstances which the judge must take into considera-
tion in authorizing the institution of the proceedings and
continuing them.''

In the brief for appellants the error specified in the fifth
assignment is treated as included in and supplementary to
the third by way of argument in support thereof. The theory
of appellants as to this phase of the case is in substance
that under the terms of article 169 of the Regulations the
basis of the present action lies in ''malice or negligence in
not making a true statement of the facts and of the circum-
stances which the judge must take into consideration in au-
thorizing the institution of the proceedings and continuing
them;'' that the contention of plaintiff herein as to the want
of an agreed liquidation implies an excess in the amount
claimed in the foreclosure proceedings over and above the
sum actually due; that whatever damages were caused by
the false averment in this regard would consist in the dif-
ference between the amount so claimed and the amount of
the actual indebtedness together with interest, costs, disburse-
ments, and possibly attorney fees; that the judgment should
have provided for a return to the previous *status quo*, that
is, that the same should not only have ordained the delivery
to plaintiff of his property sold in the foreclosure proceed-
ings but should have included a pronouncement covering the
fruits produced by such property. from the date of the sale;
that if an agreed balance is not a prerequisite to the institu-
tion of the foreclosure proceedings there could have been
neither negligence nor malice in the false averment as to
such alleged agreement and therefore no cause of action
against defendants for damages. In this connection appel-
lants cite 27 Cyc. 1472; *Stevens* v. *Clay*, 3 Pac. 43; *Shears*
v. *Traders Building Association*, 52 S. E. 860; *Las Vegas
Railway Power Company* v. *T. R. Company of St. Louis*, 126
Pac. 1009, and sections 436 and 457 of the Civil Code as
indicating that the doctrine of *caveat emptor* applies to fore-

closure sales; that the purchasers at such sales are liable and must account for rents and profits, and that the court below should have ordered such an accounting herein.

Had the mortgagees brought suit for foreclosure under the Code of Civil Procedure the mortgagor not only would have had ample opportunity to defend and protect his rights, whatever they may be in the proceeding, but during the ordinary course thereof would have remained in possession of the mortgaged property for a period approximately equal to that during which he has been deprived of the use thereof pending the recovery sought in the present suit. The loss suffered during the continuance of such ouster would seem to be the natural result of the unwarranted and malicious resort to the summary proceeding of the Mortgage Law and a reasonably fair method of estimating the damages so caused. A sufficient answer to the rest of the argument under the third and fifth assignments as combined by appellants, in so far as it has not been covered in our discussion of other matters, *supra,* is that if appellants desired to shift their responsibility to the shoulders of the purchasers at the sale, then they should have asked that such purchasers be made parties in the court below in order that, after due hearing, their liability and the amount thereof might be fixed. Not only does the suggestion come too late when made for the first time on appeal, but the purchase price amounting to more than twice the amount of the judgment herein is still in the hands of appellants, and the payment of such judgment, without prejudice to whatever claim they may have to subrogation and reimbursement, can work no great hardship on them.

Under the fourth assignment it is intimated that the items covering plowing, the preparation of seed beds and the proceeds from such beds were included in the purchase price of the property. But as we have just pointed out, the proceeds of the sale are in the hands of appellants and either the pur-

chasers of the mortgagees, not plaintiffs, have reaped the returns from the money and labor so invested. Again, appellants say that plaintiff should have deposited in court the amount of his indebtedness as claimed in the foreclosure proceedings, thus preventing the losses incurred, and that his brothers were well able to lend him the money required. But it does not appear that plaintiff was able to do this, and certainly his brothers were under no legal obligation to advance the money for the purpose. The testimony of plaintiff on this point is that he had the money at the time of the attempted liquidation of accounts and on that occasion offered to pay in cash whatever the true balance might be, but that after the institution of the summary proceedings other creditors pressed for and forced a settlement of other outstanding indebtedness, thus making it impossible for him to bid at the sale of the mortgaged property. He also insists that there was no collusion or secret understanding between him and his brothers who bid in the property and that he was turned out of possession by them following such acquisition. Appellants cite no authority upon this point beyond the general principle that "there can be no recovery for losses which might have been prevented by reasonable efforts on the part of the person injured." The invocation of that rule does not come with good grace from mortgagees who, in order to take advantage of the summary proceeding of the Mortgage Law, and of the inability of the mortgagor under the express provisions of that law to challenge the truth of the jurisdictional averments, have resorted to a deliberate misrepresentation of fact amounting to a fraud upon the court. In the circumstances we are not strongly impressed with the suggestion of a rigorous application of the general principle in question to the facts of this particular case.

The contention that the compensation fixed by the court below is not commensurate with the loss or injury, is based

on the theory already referred to and disposed of, that plaintiff has a right of action against the purchasers at the foreclosure sale for an accounting as to rents and profits. Nor does it follow from the bare possibility of a conceivable loss of the money expended on plowing and in preparation of the tobacco seed beds through failure of crops or inability to dispose of the tobacco slips at the market price, even though plaintiff had remained in possession of the property, that the damages so estimated are too uncertain and remote to sustain the judgment. The evidence in this regard established a *prima facie* case and put the burden on the defendants to show that the money so invested in fact produced no return, or would have produced none had plaintiff not been ousted. And finally, the omission of the trial judge to discount taxes and interest on mortgages, including that of appellants, which it is said plaintiff would have had to pay, can hardly be regarded as error, inasmuch as there is nothing to show that defendants or others have in fact paid such taxes and interest, or that plaintiff will not be obliged eventually to pay both.

The theory of the complaint and of the court below as to what constitutes a proper measure of damages in a case of this kind is not challenged in its general aspect under the fourth assignment; and, in so far as the same goes merely to the sufficiency of the evidence to sustain the several items forming the sum total of the amount specified in the judgment, we find no such manifest error in the fixing of such sums by the trial judge as to warrant a modification. Nor can we say, all things considered, that the court below abused its discretion in the matter of attorney fees as suggested in the sixth assignment.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.